UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
                                  )
TAWANA BENJAMIN,                  )    1:23-cv-02823-NCM-MMH
                                  )
                 Plaintiff,       )    Brooklyn, NY
                                  )    April 10, 2024
                 vs.              )    10:48 AM
                                  )
THE CITY OF NEW YORK, ET AL,      )
                                  )
                 Defendants.      )
```

TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE MARCIA M. HENRY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:        ROSE M. WEBER, ESQ.
                           LAW OFFICE OF ROSE M. WEBER
                           199 Main Street
                           Suite 801
                           White Plains, NY 10601

For the Defendants:        EUN JEE (ESTHER) KIM, ESQ.
                           ALEXANDRA CORSI, ESQ.
                           NEW YORK CITY LAW DEPARTMENT
                           100 Church Street
                           New York, NY 10007

ECR OPERATOR:              N/A

Paul T. Abramson
eScribers
7227 North 16th Street
Phoenix, AZ 85020
www.escribers.net

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

THE COURT: Civil cause for a status conference in 23-cv-2823, Benjamin versus the City of New York, et al. As a reminder, pursuant to Local Civil Rule 1.8, the parties may not independently record any court proceedings. Violations may result in sanctions, including, but not limited to, restricted entry or denial of entry to future hearings or any other sanctions deemed necessary by the Court. The transcript of this proceeding may be ordered from the clerk's office. With that being said, could counsel please state their appearance for the record, starting with the plaintiff?

MS. ROSE WEBER: Yes, Your Honor. It's Rose Weber for Ms. Benjamin.

THE COURT: Good morning. Oh, no, good afternoon.

Could defense --

MS. ESTHER KIM: Good after --

THE COURT: Yes.

MS. KIM: Sorry. Good afternoon, Your Honor. Good afternoon, Your Honor. Esther Kim from the New York City Law Department on behalf of defendants. And with me today, I have my colleague, Ms. Alexandra Corsi, as well.

MS. ALEXANDRA CORSI: Good afternoon, Your Honor.

THE COURT: Good afternoon to each of you.

All right. So we're here for a status conference. And since the last time we convened, there have been a number of filings. And in fact, I think the last time that we

convened was for an early settlement conference a few months ago. And as mentioned, there have been various letters filed relating to discovery.

The one that I wanted to focus on now is the motion to compel at document 26 filed on December 21st, 2023, to which there have been some follow-up filings. On January 12th, 2024, there was a response, at document 30. In addition, the parties filed a status report on February 27th, at document 31, which sought to clarify, pursuant to my request, which discovery disputes were still outstanding, as it were, and which were not.

So what I would like to do is really confirm with the parties whether or not there still remain disputed items, given that this letter was filed in late February, and then to the extent that there are remaining disputes, talk about how they can be resolved, whether now or with the benefit of additional input from the parties.

So Ms. Weber, I'm going to start with you, and it would be helpful for me if, in looking at the February 27th filing, at document 31 -- for the items that are listed as undisputed, and there are many, are you still contending that they are, in fact, undisputed and we don't need to address them during this call?

MS. WEBER: Fair enough. And I think that's the best way to approach it, Your Honor, is to run down that list.



So as far as the undisputed items, I've not yet received the identity of all officers there.  There's no objection to it being provided.  I just haven't received those.  Disciplinary records were good.

THE COURT:  I'm sorry, Ms. Weber.  Let's go item by item.

MS. WEBER:  I'm sorry, Your Honor.  Yeah.

THE COURT:  The first item is interrogatory number 1, which, yes, involves the identity of the officers present at the incident.  Your contention is that you have not received the names of all officers.  Is that correct?

MS. WEBER:  That's correct, Your Honor, and specifically the TARU officers.

THE COURT:  The TARU officers.  Sure.

Ms. Kim, Ms. Corsi?

MS. KIM:  Yes, Your Honor.  In regards to interrogatory number 1, it is our understanding that the names of the officers who were present were provided to Ms. Weber.  However, the identities of the TARU officers -- we're still working on identifying if they were present at all and if they were present, who they were.  We're still working on that, Your Honor.

THE COURT:  Okay.  So this has been since February.  What is there to work on?

MS. KIM:  It's -- we've been trying to -- oh.



MS. WEBER:  No, I'm sorry.  I was just going to say I couldn't quite hear what the judge had said.

THE COURT:  The question is, what's taking so long?  This letter was filed in February.  It's now April.  What's taking so long to identify the TARU officers?

MS. KIM:  It appears that the TARU officers were not present at location on the incident, and they essentially just received -- the officers just received confirmed information from the TARU officers.  But when speaking with the officers, it's not really specifically recalled as to who they spoke to at the TARU Department and who those individuals were from TARU.

THE COURT:  Okay.  So approximately how many people are we talking about here?  Because it's just odd to me that it's taking this long to identify police officers for a documented event.  Approximately how many officers?

MS. KIM:  The officers, approximately the five defendant individuals, Your Honor.  However, for the TARU officer specifically, I can't specifically say, Your Honor, but it appears maybe it was around two or three, but I -- that's just from speaking with the officers' recollection, Your Honor.

THE COURT:  Okay.  All right.  I'm going to return to this at the end of the call, because I'm going to need to set some deadlines for the production of this information.  This is a relatively simple task, although I understand that it may be

complicated by various factors, but it's really the present.

MS. WEBER:  Your Honor, may I just add one thing, possibly, about the TARU officers?

THE COURT:  Um-hum.

MS. WEBER:  I'm just not even sure how relevant they really are because -- I mean, it might be helpful if you kind of -- if Ms. Kim maybe gives a little bit of a background as to what even their involvement was, because I don't think it's relevant to the claims that are at issue in this case.  My understanding is that really the TARU officers just, I think I understand, possibly gave information to the officers who responded to the apartment on the date of incident.  And the issue is whether the officers unlawfully entered the apartment to locate a nonparty.  So the information TARU gave to the officers was regarding a nonparty.  So I'm just not really sure how they are relevant to the plaintiff's claim, which is whether they entered her apartment.

THE COURT:  Respectfully, respectfully, Ms. Corsi -- and I understand --

MS. WEBER:  Yes.

MS. KIM:  -- that you were coming in as co-counsel to Ms. Kim today.

MS. CORSI:  Um-hum.

THE COURT:  I don't see a relevant objection in the response to interrogatory number 1.  So at this point, I'm

moving on to the next interrogatory, and I'm going to come back to this one in terms of setting a deadline for the production of the information.

The next undisputed item in document 31 relates to responses for interrogatory 4 and document requests 21 and 22. Ms. Weber, what, if anything, is outstanding from this?

MS. WEBER: Nothing. Those have been provided, Your Honor.

THE COURT: Okay. Thank you. Next is the response to interrogatory number 6 and document request 6 and 14 relating to plaintiff's complaint made to IAB. Anything outstanding there, Ms. Weber?

MS. WEBER: Well, I think that's a bit of a matter of opinion, Your Honor. There's no question --

THE COURT: (Indiscernible) concerned about whether or not there's any outstanding items, Ms. Weber. Is it your opinion that there are outstanding items?

MS. WEBER: I believe there are.

THE COURT: Okay. What do you believe is outstanding?

MS. WEBER: The only thing I've been provided is the transmittal when IAB sent this file or this complaint along to CCRB. I haven't seen any underlying IAB documents.

THE COURT: Okay. Ms. Kim?

MS. KIM: Yes, Your Honor. It is our understanding that there are no underlying IAB documents or files associated

with this complaint.  Specifically, Ms. Benjamin had made an initial complaint to IAB via telephone call.  That was then -- IAB then dropped it down to CCRB, and it was CCRB who conducted the full investigation of the complaint.  And CCRB's entire investigatory files and documents have been provided to Ms. Rose, along with a copy -- I mean Ms. Weber, sorry -- along with a copy of the original IAB complaint that was recorded when Ms. Benjamin first called.  And those are the only files that we've received because it appears at this time that there are no underlying IAB files or documents in possession with IAB.  It was all CCRB, Your Honor.

THE COURT:  Understood.  All right.

Anything else on that point, Ms. Weber?

MS. WEBER:  No, Your Honor.  I mean, at some point I may ask for some sort of an affidavit as to the search that was made, but we don't need to belabor it now.

THE COURT:  Well, I deem that to be resolved based on Ms. Kim's representations as to what was produced, because the call of the interrogatory is around the file for the complaint made to IAB, and IAB kicked it over to CCRB.  You got the CCRB file.  So that's (indiscernible).

MS. WEBER:  Fair enough, Your Honor.  Yes, thank you.

THE COURT:  Okay.  Next is interrogatory 11 relating to the identity of the ADA.  Excuse me.  Is that still an outstanding item in your opinion, Ms. Weber?



MS. WEBER:  No.  That has been provided, Your Honor.

THE COURT:  Okay.  Next is the response to document request 2 relating 911 tapes or sprint reports and the like.  Anything outstanding there, Ms. Weber?

MS. WEBER:  Yeah, I've gotten nothing on that, Your Honor.  Perhaps there is nothing.  I've gotten nothing.  Let's hear from Ms. Kim on that.

MS. KIM:  Yes --

THE COURT:  So hang on a second.  Hang on a second.  Hang on a second.  So this is document request 2.  And the response was that you -- you, meaning the defense, was continuing to search for the documents.  Ms. Kim?

MS. KIM:  Yes, Your Honor, in our search, there doesn't appear to be any 911 call or printout or recording that was made in regards to the specific incident, as the officers were not responding to a 911 call that was placed.  So there's no record of a 911 call for February 3rd of 2022 in relation to this specific location.

THE COURT:  Okay.  Then that's resolved.

The next is document request 3, the domestic incident report.  Ms. Weber, anything outstanding there?

MS. WEBER:  Nope.  Got that one.

THE COURT:  Okay.  Then that is resolved.

Next is response to document requests 5, the city-involved accident report prepared by defendant Nieves.

MS. WEBER:  I'm sorry, Your Honor.  I received -- yes, I received that.

THE COURT:  Okay.  And that's resolved.  Response to document request 9, which is an active bench warrant.  I think I feel like we had a discussion about this previously, but anything outstanding there?

MS. WEBER:  No, no.  As the letter says, that's been produced.

THE COURT:  Okay.  Again I -- we started off this discussion with going through the, as characterized, quote, undisputed items, and then we've had discussion about a few of them in order to avoid any confusion.  I just want to make sure that everything is resolved.

MS. WEBER:  Of course.

THE COURT:  The next is document request 16, which is defendant Nieves' case file.  Ms. Weber?

MS. WEBER:  Yep, got that.

THE COURT:  Resolved?  Okay.  And then the responses to requests -- document requests, excuse me, 26 and 27.  Are the stated outstanding items still outstanding?

MS. WEBER:  They are still outstanding, Your Honor.

THE COURT:  Okay.  Ms. Kim?

MS. KIM:  Yes, Your Honor, I understand that we produced several sections from the patrol guide previously with the defendant's initial disclosures.  However, with these

additional topics for -- as listed in this letter, for exigent circumstances, proper handling of evidence, property of arrestees, we believe those may be extensive and beyond the scope of the issues at hand.  But to that extent, I'd just like to note that the patrol sections are available publicly online on the NYPD's Public Directory website, and there may be some of these sections that Ms. Weber lists in the specific interrogatory that may or may not even exist in the patrol guide, and some of them may be confidential, which would have to be requested and obtained through a separate avenue than just the NYPD.

THE COURT:  Ms. Weber?  Ms. Weber, are you still there?

MS. WEBER:  Excuse me?  I'm sorry.

THE COURT:  No, I was asking for your response to Ms. Kim's (indiscernible).

MS. WEBER:  Oh, I'm sorry, Your Honor.  You are cutting in and out a bit.  I don't know if the problem is at my end or yours.

At last count, the patrol guide was online in some forms, but without any sort of index or table of contents, which makes it essentially useless.  And these are sections that the unit that assists the Court's counsel can easily lay their hands on.  I don't think I should have to go on a scavenger hunt for them.  And I'm also looking for training

materials, as Kim has not addressed that part of it.

THE COURT: Okay. So first, Ms. Kim, there is something to be said for the fact that, in response to a duly served document request, that yes, it is incumbent upon the recipient to respond by providing the document as opposed to relying on the fact that that document may be available online. If the document online is not user friendly or otherwise amenable to search, then yes, part of the production requirement is to provide that information.

But again, I'm still a little bit unclear. Ms. Weber, you've indicated that you have received two sections of the patrol guide and that there are multiple others that you believe are in existence that you have not yet received?

MS. WEBER: Correct, Your Honor.

THE COURT: Okay. Back to you, Ms. Kim.

MS. KIM: Yes, Your Honor. Specifically with these topics -- I understand the response being necessary, even if it's publicly available, Your Honor. But these specific topics that Ms. Weber lists in terms of exigent circumstances and the safeguarding the property of arrestees, also for arrests of general processing, it's our position that these topics don't appear relevant, as Ms. Benjamin was not arrested on this date of incident.

THE COURT: I see. Okay.

MS. WEBER: I never asked for arrest general



processing. I'm not sure where you got that. I was very careful narrowly to pick topics that actually do apply to this particular situation.

THE COURT: Well, let me let me go to the requests themselves. So we're talking about document requests 26 and 27. And what I'm looking at is document 26-2, which was attached to your December 21st, 2023 letter, Ms. Weber. Document 26-2 is the defendant's response to the document request as well as interrogatories.

And on page 41 is the request number 26, which includes the documents enforced on February 3rd concerning -- and then it goes through a sort of laundry list -- procedure or practice in regard to obtaining and executing search warrants; surveillance of individuals and/or locations; procedures for locating a suspect; what constitutes exigent circumstances to enter a home; proper handling of evidence; safeguarding the property of arrestees; procedures for gaining forced entry to a residence; and in particular, NYCHA apartments. So of these, Ms. Weber, the ones that you believe are missing are everything except the ones relating to arrest on a warrant and arrest general processing?

MS. WEBER: That's correct, Your Honor.

THE COURT: Okay. And, Ms. Kim, your objection is that you don't believe that the others are relevant?

MS. KIM: Yes, Your Honor, that would be our position.

THE COURT:  Mmm.  Well, all right.  But for this one you actually did put that in your response.  Okay.  I'm going to come back to that one because we have a few to return to for various items.  This one, I will come back to after I hear the parties' arguments.

So now we have -- this last response to request 26 and 27, that's the last of the, quote, undisputed items.  Now we're getting into items that you've indicated are partially disputed.  And so again, I'm going to start with you, Ms. Weber.

With request to -- excuse me -- with response -- with respect to document request 4, which is the printouts from the TLO database, is that still an outstanding issue?

MS. WEBER:  The part that I wrote was outstanding, it's still outstanding.  In other words, the TLOs have been provided for the fellow they were looking for and for Sandra Benjamin (ph.), but they are extremely heavily redacted.  And my position is that those documents contain information that the officers will probably use to justify breaking into the apartment, and I need to be able to see what's on those documents.

THE COURT:  Okay.  Ms. Kim?

MS. KIM:  Yes, Your Honor.  So on the TLO data page report, which was provided on behalf of Mr. Sully Jackson (ph.) and Ms. Sandra Benjamin, the redactions were for completely

unrelated information to this matter, including possible relatives that they were associated with, indicators of bankruptcies, unrelated possible phone numbers besides the ones that are listed, date of birth.  And then for the addresses, the report specifically lists all the associated addresses of an individual, once the officers' search of that individual's name on the database, and we redacted all the other prior personal addresses besides the one involved in this specific case, which was for, as listed, 502 Marcy Avenue.  And we kept that address, Your Honor.  The only other redactions were for these other addresses that were associated with the individual that have nothing -- no relation to 502 Marcy.  It's just listed when the search results pop up for the report of this individual.

THE COURT:  Okay.  Understood.  And in your letter, Ms. Kim, you did talk a little bit about this.

Ms. Weber, anything else to add on this point?

MS. WEBER:  Just that, clearly, I have no need to know who went bankrupt, for instance.  But as far as other addresses, other phone numbers, I need to be able to see if they, in fact, had other addresses for Sandra Benjamin, which would lead me to think they knew she wasn't living here.  This is not sensitive information.  Prior phone numbers, relatives, none of that is sensitive information.  I could obtain any of it if I pay 19.95 to one of these services.

So I think I'm not saying the whole document needs to be unredacted.  As I said, I don't need to know if they went bankrupt, but things like relatives, addresses, phone numbers, I believe I'm entitled to that.

THE COURT:  You're entitled to relatives' addresses and phone numbers?

MS. WEBER:  No, no, not the addresses.  There were commas in there.

THE COURT:  Okay.

MS. WEBER:  The addresses and phone numbers of these two people and a listing of their relatives.  I could even give on the relatives part, but certainly, at least the addresses and phone numbers.

THE COURT:  Okay.  Ms. Kim, it's unclear.  Are you asserting some sort of privilege over this information?

MS. KIM:  Your Honor, if I may add on to my previous statement and also respond to your question as well?

THE COURT:  Yes.

MS. KIM:  The redactions for the address histories of these individuals and the phone numbers, they're listed as possible address history and possible phone numbers that were associated with the individual.  And we just -- I just would like to respectfully note that, in the previous document, request number 16, which was undisputed, the case filed that was maintained by defendant Detective Nieves lists all the



phone numbers that were associated with the investigation of Mr. Jackson's specific phone number that then led the officers to Ms. Benjamin's apartment for this matter. That phone number was provided, Your Honor, along with all the addresses that eventually led the officers to 502 Marcy Avenue. We kept those addresses as listed in the entire case filed by defendant Detective Nieves. And so our redactions for here on the TLO database is just for those addresses that were listed as associated but unrelated to this matter at hand, Your Honor, along with the phone numbers as well.

THE COURT: In other words, Ms. Weber, I think what Ms. Kim is saying is that you have the relevant addresses that would have led to the identification of Ms. Benjamin's apartment.

Is that a fair characterization of your argument, Ms. Kim?

MS. KIM: Yes, Your Honor.

MS. WEBER: Well, that may well be, Your Honor, so for that piece of it, perhaps. But going back to Sandra Benjamin, there's going to be a hotly contested issue in this case as to whether the officers reasonably believed that she was in the apartment. So at the very least, I should be able to see an address listing for her. Because this is what the office -- this is the information the officers had in front of them.

THE COURT: Okay. How extensive is this document, Ms.



Kim?

MS. KIM:  The TLO database report, it does not extend beyond two pages, Your Honor.

THE COURT:  Okay.  It's a little bit difficult to understand the scope of the document without seeing the document itself.  And while I hesitate to insert myself for in-camera review, this might be one where I need to look at the document to understand exactly what it is that's being provided and why it's being withheld.

MS. KIM:  Yes, Your Honor.  We will --

THE COURT:  Okay.  Hold on.

Ms. Weber, do you have any objection to that?

MS. WEBER:  No, no, Your Honor.  I'd be -- if you're willing to, I'd be all in favor.

THE COURT:  Well, if it's only two pages, sure, yes.

MS. WEBER:  Thank you, Your Honor.

THE COURT:  Sure.  So --

MS. KIM:  Your Honor?

THE COURT:  Yes, Ms. Kim?

MS. KIM:  It just -- I don't have an issue with producing the unredacted pages of the TLO database report for both Ms. Sandra Benjamin and Mr. Sully Jackson, Your Honor.

THE COURT:  Okay.  And -- I'm sorry.  Are those -- well, let me just make sure that I'm clear, because those were already produced unredacted.

MS. KIM:  They were produced previously to Ms. Weber with redactions.  But just subsequent to our discussion right now, defendants can respectfully produce unredacted the same items.

THE COURT:  Okay.  Then, Ms. Weber, you're getting an unredacted document, so this is resolved.  Great.  Okay.

Next document request 28.

MS. WEBER:  Document request 28, I have not received anything, and it's become a bit muddy what the defendants are and are not willing to produce.  So perhaps they should speak first.

THE COURT:  Well, yes, my point is to always find out from you whether or not you believe you have received a document, and then to turn to the defense to determine what their position is.

For the record, request number 28 refers to any and all emails sent from or to each defendant's department-issued email address on the date of the incident, as well as any and all emails concerning or mentioning the incident, regardless of the date or dates of the emails.  And on its face, Ms. Weber, I agree that this is an extremely broad request, but let me hear from the defendant as to specific objections and/or whether or not any information has been produced in response.

MS. KIM:  Yes Your Honor.  So in regards to document request number 28, our objections were that we have no issue

with producing the emails that pertain to what led the officers to eventually apprehend Mr. Jackson at Ms. Benjamin's apartment address.  However, with the request for all the emails that the defendant officers sent or received on the date of incident, which is February 3rd of 2022, we raise the objection that that is very extensive and very broad and just irrelevant to the matter at hand.

And additionally, it is further our understanding that the emails the officers have in possession go to a department archive -- is what I was told.  And because this incident relates back to 2022, I believe it's after a year that we can't just simply request those emails to be taken out of the archive to then be sent, per se.  But just going back to any and all the emails on the date of incident, we believe those are overbroad and extensive and just irrelevant, Your Honor.

THE COURT:  Okay.  So have any of the emails been produced?

MS. KIM:  Not at this time, Your Honor.

THE COURT:  So even the ones that you don't actually object to?

MS. KIM:  Not at this time, Your Honor.  We're trying to obtain the emails from 2022.  So it's been a little bit difficult to try to go back to the officers' email inbox history to try to siphon out which relate to the incident from, at this point, two years ago, Your Honor.

THE COURT: Right. This request has been outstanding, though, for some time because the original motion on this was filed in December. So what is your status on actually obtaining these archived emails specific to this one date?

MS. KIM: Yes, Your Honor. So we've received some emails from some of the officers. However, we're still trying to obtain any emails from the other remaining officers. But that's all to say we don't have all the emails as of yet, Your Honor.

THE COURT: So you have some of them already?

MS. KIM: Some, yes, Your Honor. I can produce the ones that I have to Ms. Weber and then produce the remaining on a rolling basis as I receive them from the archive, Your Honor.

THE COURT: Yes. I think that that is a wise course of action.

Ms. Weber?

MS. WEBER: Yes. I would just like to clarify, asking Ms. Kim to clarify something. She said, emails leading up --

THE COURT: Ms. Weber, are you still there? Ms. Weber? Is anyone still there?

MS. KIM: We're still here, Your Honor. This is defendant.

THE COURT: Okay. Okay. It sounds like Ms. Weber's phone may have dropped the line. We can give her a minute to dial back in.

(Pause)

MS. WEBER:  Hi, I'm back.  I got dropped again somehow.  Can everyone hear me?  Or at least can Your Honor hear me?

THE COURT:  Yes, I can hear you, Ms. Weber.

MS. WEBER:  Terrific.  So when I got dropped --

THE COURT:  Hold on just one second.  Hold on just one second.

So first, Ms. Kim, Ms. Corsi, can you also hear Ms. Weber?

MS. KIM:  Yes, Your Honor.

THE COURT:  Okay.

MS. WEBER:  Yes.

THE COURT:  Good.  Now, what we were talking about were the emails in response to requests for production of document number 28.  Ms. Kim just indicated that she's received some emails.  Ms. Weber, I was turning to you to ask if you had anything to add.  Although before that, I have a question.

And Ms. Kim, the question is you said you have some emails.  By some emails, are you referring to some emails of some of the defendants?

MS. KIM:  Yes, Your Honor.

THE COURT:  Okay.  Would you be able to tell me which defendant's emails you currently have?

MS. KIM:  Yes, Your Honor, if I can have ten seconds?

THE COURT: Sure.

MS. KIM: Yes, Your Honor. So at this time, I've received some emails from Ofc. Michael Walsh as well as Detective Pedro Nieves.

THE COURT: Okay. Thank you.

Ms. Weber?

MS. WEBER: Yes, Your Honor. When I got dropped, what I was trying to clarify was what I heard Ms. Kim say is they would provide emails leading up to this apprehension. We're also entitled to emails if the officers discussed the apprehension after it happened.

THE COURT: So you are looking for emails before February 3, 2022, and then after. Well, how long after? Because again, your response -- your request is overbroad. So your request says, emails sent to or from on the date of the incident and then any emails concerning or mentioning the incident, regardless of the dates of the emails. Well, frankly, again, that's -- now that there's a litigation, there could be emails that were sent as recently as last week, quote unquote, about the incident, which at this point may be subject to some sort of attorney-client privilege. But my point is that your request is super overbroad. So if we're talking about emails that discuss the incident, quote unquote, regardless of the date of the emails, we need to cabin that because it can't be -- this is any email in the known universe

about this.

MS. WEBER:  Fair enough.

THE COURT:  It needs to be updated to to to what you're asking for.  It needs to be reasonable and it needs to be proportional.  So -- you know, it doesn't sound like there's been a discussion amongst counsel as to what that could be, given what Ms. Kim just described as the difficulty in even getting the emails in the first place.  But that is something that, given that Ms. Kim has indicated that there will be a rolling production, then you all need to discuss what the scope of this date range is.  I can set the date range for you, but I think it's probably better if you try to set something for yourselves.  And Ms. Weber, keeping in mind that reasonableness needs to govern any such request.

MS. WEBER:  Yes, Your Honor.  I'm sure we can do that.

THE COURT:  Ms. Kim?

MS. KIM:  Yes, Your Honor.

THE COURT:  Okay.  I'm going to come back to the emails as well, because as was noted in prior letters, the discovery deadline, at this point, had passed and there was a request to extend it.  And based on what you've described, Ms. Kim, it sounds like you would not have necessarily had those emails by the discovery date anyway.  But I will come back to the response to RFP 28 in terms of setting some deadlines around the next steps for that.

So that ends the discussion of the discovery demands in the, quote, partially disputed section of document 31. Now we're down to the actual disputed items on page 3 of document 31, the first dealing with request number 12, documents concerning the investigation conducted during the six-month period preceding the incident.

Ms. Weber?

MS. WEBER: Your Honor, now that I've gotten Detective Nieves' file and have reviewed that, I think that goes a long way toward satisfying this one. And at this point, I would be satisfied with with Ms. Kim's assurance that that would be the universe of documents responsive to that.

THE COURT: Even if Ms. Kim were to say that, certainly there's the ongoing duty to supplement any response. So I'm not sure what is accomplished by you having Ms. Kim make a declaration on the record that that's the whole universe of documents if, in fact, in the course of diligent searching, more documents are uncovered.

But Ms. Kim, did you have a response?

MS. KIM: Yes, Your Honor. So to the extent of a response, it is our understanding that the only investigatory files relating to Detective Nieves, or even to the apprehension of Mr. Sully Jackson at the 502 Marcy Avenue address, was produced via Detective Nieves' case file, which is the only case file at hand regards to the apprehension, Your Honor.

THE COURT: Okay. Then -- well, again, this is all in the context of a motion to compel. So we'll deem this as resolved for now. Of course, if there's a determination that there's an issue later, then we'll go with that. But this one I'll be resolved as to request number 12. And then request number 19, which is documents created by Detective Paree (ph.) -- Parray (ph.) or Perray (ph.).

MS. KIM: Puray (ph.), Your Honor.

THE COURT: Puray. Okay. Ms. Weber?

MS. WEBER: Yes, Your Honor. I think the defendants have been construing what I asked for much too broadly. I never asked for the whole investigation file into the homicide. That would be ridiculous. What I ask for is literally what the words say, just any documents created by Detective Puray concerning this incident. Not the homicide, this incident, and the apprehension. And maybe Detective Puray didn't create any documents, and then that's the answer. But to the extent he did, to the extent it specifically concerns this incident, I'm entitled to them.

THE COURT: Ms. Kim?

MS. KIM: Yes, Your Honor. So Detective David Puray was the detective that was assigned to Mr. Sully Jackson's homicide investigation. And it was Detective Pedro Nieves who was assigned to Mr. Sully Jackson's apprehension. So they're the case files that may be be maintained for the murder

investigation by Detective Puray -- they don't go to the issue at hand of determining whether the officers were lawfully led and then entered Ms. Benjamin's apartment on February 3rd of 2022.  They don't go to Mr. Jackson's eventual apprehension at 502 Marcy Avenue.  So everything that was in relation to Mr. Jackson's apprehension on this date was produced via Detective Nieves' case file, who was the detective in charge of Mr. Jackson's apprehension, not the underlying homicide or the unrelated homicide incident for Mr. Jackson.

THE COURT:  Okay.  If I understand you correctly, Puray was dealing with a completely separate portion of this investigation.  Is it the defense's contention that then Puray would not have been -- would not have created any documents?  Because that's the call of the request.  He would not have created any documents relating to the incident on February 3rd.

MS. KIM:  Yes, Your Honor.

THE COURT:  Okay.  Ms. Weber?

MS. WEBER:  Your Honor, no offense at all to Ms. Kim, but I just find it very hard to imagine that the lead detective in a homicide where they've been searching for the fellow for months would not in some way notate something to say, hey, we got him, and then perhaps beyond that, how he was gotten.  I just can't fathom a situation where Puray would have made no notations about having nailed the suspect.

THE COURT:  Well, there were some documents that were



provided.  I'm looking at the response in document 26-2 at pages 35 to 36.  And on page 36, it refers to nonprivileged NYPD arrest documents and memo book entries for Officer Puray. So what else are you looking for?

MS. WEBER:  I never got those, Your Honor.  I don't have those.

THE COURT:  Okay.  They were produced -- according to this document, they were produced with the defendants' August 28, 2023 initial disclosures.

MS. WEBER:  Ah, that means they would have been in the CCRB file, Your Honor.  But I still find it hard to believe that there are no other documents, not even a mention of the apprehension.

THE COURT:  So Ms. Kim, has there been a search of  -- is it Officer Puray's or Detective Puray's documents, or files for documents responsive to this request?  I understand that he was assigned to the homicide investigation, but the question is whether or not he created documents relating to this incident, notwithstanding his assignment.

MS. KIM:  Yes, Your Honor.  So it's our understanding that Detective Puray's -- any files that were created by Detective Puray were in relation to Mr. Jackson's homicide incident.  So the reason for the two separate detectives being assigned, Detective Puray to the homicide incident and Detective Nieves for Mr. Jackson's apprehension -- all the

documents in relation to Mr. Jackson's apprehension for this incident were produced via Detective Nieves' case file, because there was nothing else beyond this case file by Detective Nieves, who was assigned to the apprehension.

THE COURT: Well, my question is, was there a search done of Officer Puray's files to determine whether he created any documents relating to this incident?

MS. KIM: Yes, Your Honor. A request had been made.

THE COURT: And has it been completed?

MS. KIM: I believe when we --

THE COURT: Hang on.

Ms. Weber, are you still there?

Okay. I think we lost Ms. Weber again. Collect your thoughts on that answer, Ms. Kim, while we await Ms. Weber calling back in.

MS. KIM: Yes, Your Honor.

(Pause)

THE COURT: Ms. Eun (ph.), is Ms. Weber still on the line?

UNIDENTIFIED SPEAKER: She has not dialed back in yet, Judge.

THE COURT: Okay. We'll give her a minute. Thanks.

MS. WEBER: I am so embarrassed, Your Honor. I guess it's my phone. I don't know what's going on. I never have these problems.

THE COURT: It's okay. It happens. Technology is what it is.

MS. WEBER: Thank you, Your Honor. That's very gracious of you.

THE COURT: Sure. Ms. Kim was just in the middle of responding to my question as to whether or not the request to search Officer Puray's files for documents responsive to this request at, excuse me, request 19, whether that request had been completed.

So Ms. Kim, you were saying?

MS. KIM: Yes, Your Honor. So at the time, we can obtain Detective Puray's file and review it for anything that relates to Mr. Jackson's apprehension. And for any of those documents that Detective Puray created that reference the apprehension, we have no problem producing if they exist.

THE COURT: Okay. Then that's what'll happen.

So that appears to be all of the items stated in the update letter at document 31. Let me go back now to a couple of outstanding items and their varying stages of outstanding.

I would say that there are two categories of outstanding. One is the category of by what date are certain requests going to be responded to. I think the requests that fall into that category are request for production 19 that we were just talking about, excuse me, relating to Officer Puray. Request for production 28 relating to emails and response to

interrogatory number 1, which is the name of the TARU officers. Those are the three things that -- where there is going to be some sort of production for response, and I need to set a deadline for that.

The other category is more of a substantive discussion around whether or not the information is going to be produced at all.  And that has to do with a request for production of documents 26 and 27 relating to sections of the patrol guide. Excuse me.

So back to that discussion, because I wanted to make sure that we got through everything else, and I'm glad that we did that because it looks like a lot of other items are now resolved and just require some deadlines.  But this one was more of a substantive conversation.

And Ms. Kim, in your response, you've essentially asked to deny the request to compel because there's been a failure to identify the topics that plaintiff seeks, and there's a relevance and proportionality discussion.

So Ms. Weber, without belaboring this point too much, tell me what exactly it is that you would like to see produced or what you believe exists that you would like to see produced.

MS. WEBER:  Well, Your Honor, I'm not sure how to describe it beyond what I've written.  Basically, there's the patrol guide sections, and separately from that, there are training materials.  And the topics I've written -- you know, I

understand that that may not be literally what the materials are captioned, but I think I've been quite clear.  And as I said -- and I'm happy to discuss it with Ms. Kim, of course.  We could sit down with a table of contents and sort it out.  But every topic in there is something that bears directly on this case.

THE COURT:  Okay.  Well, you did file a motion.  So you know, if what you'd like to do is instead have a meet and confer to go through the topics with Ms. Kim, that's fine.  But I'm here because, you know, there's a motion filed.

Ms. Kim?

MS. KIM:  Yes, Your Honor.  If Ms. -- the parties can meet and confer on any of these topics as noted, Your Honor.  We'd be happy to.

THE COURT:  Okay.  So let's do that.  We'll set -- I'll include in the deadlines that we're setting a deadline for you to confer on that -- on those particular requests.  And then if that doesn't resolve it, then we can revisit the question.  But ultimately, I am glad that many of the issues in the motion appear to have been resolved either before this conference or during this conference.  And we can talk about next steps for you all to continue with production and/or meeting and conferring, and also to talk about the overall discovery schedule, because, yes, the fact discovery deadline that was set in the scheduling order on September 5th, 2023,

has since expired.

Now let me go back to the items for deadline.  So with respect to the TARU officers, Ms. Kim, you indicated that there were approximately two or three of them.  And it's still unclear to me why it's taking so long for that, but that is something that should be produced by the end of this month.

MS. KIM:  Yes, Your Honor.

THE COURT:  That would be by the 30th.

Any objection, Ms. Weber?

MS. WEBER:  No, no, let me just toss in.  Perhaps this will aid Ms. Kim.  My reading of the documents is the TARU officers went to the apartment and only left at some point during the incident.  Ms. Kim seems to be under the impression they were never there.  But I've read the file very carefully, and I came away believing they were there.  So perhaps it will make it easier to identify them.

THE COURT:  Okay.  That's fine.  Again, I'm setting a deadline of April 30th, and if in reviewing the documents it appears as though it's readily available or readily, easily -- easy to identify the officers based on what's in the actual file, then that may facilitate identifying them.  Sure.

But you have until the 30th for that one, Ms. Kim.

With respect to the emails, the emails that you said you have in your possession already for defendants Walsh and Nieves, Ms. Kim, can you produce those by next week?

MS. KIM: Your Honor, may I respectfully request two weeks for production just so I can review the emails that were sent from their inboxes?

THE COURT: Yeah. Well, I guess we can make that -- why don't we just make all the dates the 30th? Because these are all the things that you've indicated you either have or you're willing to produce. That would include the response to RFP number 4, which is the the unredacted TLO records, the emails in response to RFP 28, the documents from Officer Puray.

Now, you've indicated that the request to search the file has been sent. I don't know whether or not that means that you have the file and it's in the process of being searched. Is that the status of the file?

MS. KIM: The request had been made, Your Honor. We have not received or obtained the file as of yet.

THE COURT: Okay. Well, when did you make the request?

MS. KIM: It was initially made, I believe at this point, months ago. We've had several follow-ups, but still have not yet requested the entire homicide file.

THE COURT: Okay. Well -- I'm sorry, you said you have not requested the entire homicide file or you haven't received it.

MS. KIM: Oh, we've requested it. We haven't received it yet, Your Honor.



THE COURT:  Okay.  Understood.  So you've requested it months ago --

MS. CORSI:  I --

THE COURT:  -- but you haven't received it yet?  Yes.  Were you saying something?

MS. CORSI:  I'm sorry.  This is Alexandra Corsi.  Esther, I just wanted to confirm, though.  Because is that -- at least the prosecution is still pending, right?  Because wasn't that one of the issues, potentially?

MS. KIM:  Oh, yes.  Yes, Your Honor.

MS. CORSI:  Yes.

MS. KIM:  It is our understanding that the criminal case for Mr. Sully Jackson is still ongoing.

THE COURT:  I see.

MS. WEBER:  So I think -- I mean, because my -- you know, and -- my kind of assumption is at most what there might be is, like, a DD-5 in the file that talks about the apprehension, which may be the same that Detective Nieves had in his file.  So I'm wondering if there's a way we can somehow just, you know, review the DD-5s because also my guess is that if this is a homicide investigation, it's probably a pretty extensive file.  So probably not super easy to get, which is probably been the reason why there is a delay and the fact that the prosecution is still open.  So my thought is, if Your Honor is amenable to this, maybe we could confer further with PD,

with NYPD, and see what we can do.  And we could provide a status update just to make sure there are no issues with either accessing the file or reviewing it.

THE COURT:  Yeah, I think -- I think, yes.  And if I -- I think I missed the obvious fact that the investigation is still ongoing, which would explain why you haven't gotten the file yet.  And if this is about an incident that is not primary to the homicide investigation, then yeah, I think I understand now what the delay here is.

So Ms. Weber, I think in light of that, yes, I'm going to give the City or the defense some time to attempt to obtain these documents that, as Ms. Corsi correctly points out, may well boil down to a DD-5 that is quite similar to something that is in the Nieves file.

And so, Ms. Kim or Ms. Corsi, what do you propose in terms of time to confer and provide a status?

MS. CORSI:  I mean, I would think -- if we could have, I think, until the end of the month as well, to just look into this, because I don't think this is something that we're going to be easily able to get the answer to, you know, in a week or two.  So if we could have till the end of the month to kind of figure this out, and if we get the information sooner, we can provide a status update sooner.  But I just would hate to commit to a week or two and it not being that easy to actually complete.

THE COURT: Okay. Ms. Weber?

MS. WEBER: Yes, and I think what Ms. Corsi -- I think it was Ms. Corsi suggested just going over the 5s. I think that makes sense, because I'm sure the file is voluminous. I would certainly be satisfied just with a review of the 5s.

THE COURT: Okay. All right. So why don't we do this? With respect to RFP 19, the Puray documents, yeah, if you can look into this, Ms. Corsi, Ms. Kim, and yes, provide me with a status report. I'm going to need a status report anyway because there's these other outstanding items. But you'll have until at least April 30th for that as well to confer with PD and provide a status.

Hang on. I think there's one more thing here. Oh, yeah, the patrol guide for RFP 26 and 27. So yes, April 30th seems to be the magic date here. So by that date, Ms. Weber and Ms. Kim, if you can confer to go through and perhaps clarify the request, Ms. Weber.

And then, Ms. Kim, if the defense's objections are the same, that's fine, but I think this just requires a conversation to clarify the request and then determine what, if anything, can be provided to plaintiff. So if that meet and confer can occur by April 30th, then I think we'll be in good stead in this case.

MS. WEBER: Yes, Your Honor.

THE COURT: Objection?

MS. WEBER:  No, Your Honor.

THE COURT:  Yeah, okay.  Okay.  Let me just look at my notes here.  Anything else?  Anything else from our discussion before I turn to the overall discovery schedule?

MS. WEBER:  No, Your Honor.

MS. KIM:  No as well, Your Honor.

THE COURT:  Okay.  Then let us turn to that schedule. So you've got a lot happening by April 30th, but overall, what I still -- it sounds like, outside of this motion, we're still in the paper discovery phase of things.  And other than the issues that have been raised in the motion --

I'll start with you, Ms. Weber.  Is there anything else that needs to be addressed or that would potentially need to be factored into what the new discovery dates are going to be?

MS. WEBER:  Not that I could think of, Your Honor.  I think that, you know, going forward from that April 30th date, we'll just need a reasonable period to do a fairly substantial number of depositions.

THE COURT:  Okay.  Ms. Kim?

MS. KIM:  Nothing on our end, Your Honor.

THE COURT:  All right.  So why don't we do this? Since you're all meeting and conferring with each other anyway, and Ms. Kim and Ms. Corsi, you're conferring with your clients anyway, why don't you provide me with a status letter by May

1st, since you're completing all of these other items by the 30th?  And in that letter, why don't you provide me with a proposed discovery schedule?  Because it's difficult for me in the abstract, and absent the completion of some of these items, to just set schedules.  I'd rather that you all talk about it.  And of course, you'll come up with a reasonable schedule that is amenable to everyone.  I guess if you don't agree on a schedule, say that in the letter too, and just tell me what your respective proposals are.  But I think it's a relatively simple thing to discuss and agree on.  And so if you could do that, that would be helpful.

Again, I'm talking about an amendment to the discovery order that was entered at document 11 on the docket.

MS. WEBER:  Yes, Your Honor.

MS. KIM:  Yes, Your Honor.

THE COURT:  All right.  Anything else from the defense?

MS. KIM:  No, Your Honor.

THE COURT:  Okay.  Ms. Weber?

MS. WEBER:  No, Your Honor.  I think we've covered everything.

THE COURT:  Okay.  Good.  And -- not everything.  What about settlement?  Has anyone revisited that topic since our last settlement conference?

MS. WEBER:  We have not discussed it again, Your

40

Honor.  I don't know that anything much has changed.  I mean, I will certainly think on it again.  I have a feeling we're going to have to do depositions.  I mean, I know it's always best to try to settle before the time and expense, but I have a feeling in this case we're going to need the depositions.

THE COURT:  Well, of course, at minimum, you would need the plaintiff's deposition.  I would agree on that if, in fact, you hadn't yet revisited discovery -- excuse me, the settlement discussion.

Ms. Kim?

MS. KIM:  Your Honor, I apologize.  I believe my colleague, who has since left the law department, has handled the settlement conference before, but I don't recall when that settlement conference was.  But --

THE COURT:  Sure.  I'll tell you.  So the settlement conference was on October 17th, and actually it was Ms. Smith-Williams who attended that conference on behalf of the defendants.  Because, yes, your other predecessor at that point had left the law department.  So it was only Ms. Smith-Williams who attended, and the case did not end in settlement.  And she made it clear that, because the case was not settling, that it was then going to be reassigned to someone else, and you became the lucky person to whom it was assigned.

So to the extent that there are settlement discussions, they were either had with your predecessor line

Colloquy

assistant corporation counsel or with Ms. Smith-Williams.  But if the two of you have not actually had that discussion, since you're meeting and conferring anyway, why don't you add that to your list of topics?  And then in the letter on May 1st, you can give me an update as to whether or not those conversations have been productive.  Please don't include any proposed terms or conditions of settlement in the letter.  Just let me know if you've had the discussion and if it's been productive.

MS. WEBER:  Certainly, Your Honor.

MS. KIM:  Yes, Your Honor.

THE COURT:  Okay.  All right.  This has been a very productive conversation.  I appreciate your time and attentiveness, notwithstanding any technological challenges that we had to go through.  If there is nothing else, then I'm adjourning this conference, and I will look forward to your update letter on May 1st, 2024.  Everyone, have a good day.

MS. WEBER:  Thank you, Your Honor.

MS. KIM:  Thank you.

THE COURT:  Bye-bye, everybody.

(Proceedings concluded at 11:49 o'clock, a.m.)

* * * * *

C E R T I F I C A T I O N

I, Paul T. Abramson, court-approved transcriber, do hereby certify the foregoing is a true and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____          April 18, 2024

Paul T. Abramson                          _____

                                          DATE

eScribers, LLC
7227 North 16th Street
Phoenix, AZ 85020
www.escribers.net

